Province of the &rbrace; Anno Regni Regis Georgii Tertii, Mag-
Massachusetts Bay, &rbrace; næ Britanniæ, Franciæ et Hiberniæ duo-
Essex, ss. &rbrace; decimo.

At his Majesty's Superior Court of Judicature, Court of Assize
and General Goal Delivery, began and held at Ipswich within
and for the County of Essex on the third Tuesday of June
(being the 16th day of said month) Annoque Domini 1772.

By the Honourable PETER OLIVER, Esquire, Chief Justice.
EDMUND TROWBRIDGE,
FOSTER HUTCHINSON,
NATHANIEL ROPES & &rbrace; Esquires, Justices.
WILLIAM CUSHING,

PROPRIETORS OF COMMON AND UNDIVIDED LANDS IN IPSWICH
*vs.* ISRAEL HERRICK & another.*

Within that part of the Province of Massachusetts Bay, which had previously been in
the Massachusetts Colony, the public had no right to take shellfish from flats lying
between high and low water mark, within one hundred rods of the upland, and which
had been improved by the owner for more than twenty years.

THE Proprietors of the Common and Undivided Lands in
Ipswich, who sue by John Patch the third, gentleman, Isaac
Smith, gentleman, and Isaac Dodge, gentleman, a committee †

---

* This report, except the head note, is copied from the records in the cus-
tody of the clerk of the supreme judicial court at Boston.  Rec. 1772, fol. 90, 91
† On file are copies of a vote of the proprietors in 1769 as to the mode
of calling meetings; of a request, in the required form, to the clerk to call a
meeting on the 13th of February 1771; of the return thereon; and of this vote

by said proprietors legally chosen and appointed for that pur-
pose, appellants, *vs.* Israel Herrick, labourer, and John Herrick,
labourer, both of Glocester in said county, both minors under
the age of twenty one years, appellees, from the judgment
of an inferior court of common pleas held at Ipswich in and
for the county of Essex on the last day of March A. D. 177.
when and where the appellants in their said capacity were
plaintiffs and the appellees were defendants. In a plea of tres-
pass for that the said Israel and John Herrick on the 27th day
of July A. D. 1770, with force and arms broke and entered on
the soil and freehold of the said proprietors in Ipswich afore-
said, being the southeast part of [a place called Bull Island in *]
Chebacco River' there, and inclosed and butted on all parts by
the water in said river, except on the northwest by the other
part of said island owned by Thomas and Nathaniel Lufkin,†
and then and there with force as aforesaid trod down, trampled
upon, dug, tore up and consumed the soil and thatch banks of
said proprietors there, and thereout dug, took and converted to
their own use one hundred bushells of clams of the said pro-
prietors, there being and growing, of the value of six pounds,
and other enormities they the said Israel and John then and
there perpetrated and did against the peace ; all which is to the
damage of said proprietors (as they by said committee say) the

passed at that meeting : " Voted, that Ensign John Patch, Capt. Isaac Smith, Mr.
Isaac Dodge be a committee jointly or severally to prosecute in the law all per-
sons that have or shall trespass in diging clams on the commoners' clam banks, and
pursue the trespassers to finall judgment and execution."

Also the following paper : " It is agreed in y⁰ action *Patch &c.* vs. *Herrick*,
that the appearance of one of the committee be admitted for all.
" John Adams. Saml Porter."

* Writ on file, dated March 7th 1771.

† On file is a certified copy of this vote of the proprietors at a meeting on
the 8th of August 1751 : " The commoners' committee with Mr. Lufkin have
viewed the state of the land at Bull Island, and settled the bounds with said Luf-
kin, beginning with the southeast side of Bull Island, at the stake and stones
between Mr. Thompson's grant and the Thatch Lott No. 441, so to run on a
strait line, as by the compass, northeast and by east, towards Corn Island : To
which Mr. Lufkin consented in open meeting."

sum of ten pounds. ["And the said Israel Herrick" "and the said John Herrick" respectively "(by John Lowell his guardian for this purpose appointed) comes and defends when, &c. and says he is not guilty in manner and form as the plaintiffs declare and thereof puts, &c. J. Lowell. And the plaintiff likewise. Saml. Porter." *] At which said inferior court judgment was rendered that the said Israel Herrick and John Herrick recover against the said proprietors costs. † This appeal was brought forward at said superior court of judicature, court of assize and general goal delivery, held at Ipswich in and for the county of Essex on the third Tuesday of June A. D. 1771, and by consent of parties said appeal was continued to the last term of said superior court, ‡ when and where the parties appeared, and the case after a full hearing was committed to a jury

---

* Pleas on file.

† In the court of common pleas the verdict was for the defendants generally, a copy of which is on file.

‡ Among John Adams's notes, in the possession of his grandson, Mr. Charles Francis Adams, are the following minutes of the evidence at this trial at Salem at November term 1771.

"PATCH *vs.* HERRICK. Clams.

"Pynchon. Grant of Ipswich or rather jurisdiction between the towns from Glocester town book 1642, and from the Province Secretary.

"1767. Perambulation from Glocester between them and Ipswich.

"Jacob Story. Perambulated for twenty years. We did not go to the marsh.

"Butler.

"Wm. Choate. The line a mile in the nearest place I should think. People freely dug.

"Lufkin. Freely dug. People on shore, with the commoners and their assigns. Have been mowing. Talk about three years about digging. Never forbid till within these years, and never knew of people's asking leave.

"Wm. Choate. In 1770, 27 July, 17 persons, 5 canoes, don't know who they are. Israel Herrick and John Herrick, it was said, were there. I went to them once, and told them they were trespassing seven years ago. 1761. Give 20*s.* a barrel [*qu.* a tide?] for digging, so that the custom about 2*s.* a barrel.

"Lufkin. 5 canoes, 15 persons, Cape Ann people. Knew John and Israel Herrick. We said nothing, nor they to us. 4 barrells of meat, 100 bushels in shells. 4 dollars a barrell. Never knew prohibited.

"Jacob Davis. Went from Cape Ann 5 years ago, and forbid, and we went off. They threatened to prosecute.

sworn according to law to try the same, who returned their verdict therein upon oath, that is to say, they find specially, vizt. : That the southeast part of Bull Island, mentioned and bounded as in the writ, is salt water flatts lying on an arm of the sea, about two miles up Chebacco River,* and is part of the common and undivided lands in said Ipswich, and is the freehold of the plaintiffs', proprietors of those lands,† and annually for the space of twenty seven years last past hath been possessed and improved by said proprietors ; ‡ that the defendants entered

---

"July 29, 1744 to 1760. Thatch banks, and all the knobs at Bull Island. Leases.   20*s.* &c. and 2*s.*

"Story.   Hired the knobs.   I looked upon it I hired to low water mark, as much as the grass.   Remember when there was no grass on the flatts, now there is, and it increases, and clams under the thatch.   Digging has a tendency to prevent the grass from getting in.

"Lufkin.   Our thatch grows poorer.   They have dug away most of the clams where there is no thatch."

Among the papers on file are certificates of the attendance as witnesses at this and other terms of Jacob Story, William Choate, Thomas Choate 3d, Daniel Lufkin, Nathaniel Lufkin, Jacob Davis and William Butler.

* Among the papers on file are two plans of the *locus in quo*, representing Bull Island as at the junction of two channels two and a half miles from the mouth of the Chebacco River, with thatch and clam banks towards the sea, and a large marsh outside of them between Cross's Island and Corn Island, which border one upon each channel ; and all the space between the channels is marked as " swatch," " marsh," or " thatch and clam banks." .

† On file are agreements determining the bounds between Ipswich and Cape Ann in May 1642, from the Ipswich and Gloucester town records ; an order of the town of Ipswich of March 15th 1659, that "no house henceforth erected shall have any right to the common lands of this town, nor any person inhabiting such house make use of any pasture, timber or wood growing upon any of the said common lands, upon pretext of any right or title belonging to any such house hereafter built, without express leave and allowance of the town first had and obtained ;" and perambulations of the bounds of Ipswich and Gloucester by the selectmen in 1767 and 1769.

‡ The only evidence on file of such possession and improvement consists of copies, indorsed " copy of the four first years that Bull Island was lett out," of votes of the proprietors at meetings held in 1744, 1745, 1746 and 1747 " to lett out the unappropriated thatch banks to the highest bidder," including " the knobbs at Bull Island," by annual leases ; and a vote, passed on the 4th of July 1763, that a committee be chosen " to take care of all the flats and clams therein, belonging

Proprietors of Common Lands in Ipswich *v.* Herrick & another.

upon said southeast part of said island and dug fifty bushels of clams;* and if upon the whole matter the plaintiffs by law can maintain this action, then the jury find the defendants guilty and assess damages for the plaintiffs at four shillings and costs; otherwise, they find the defendants not guilty. And from thence said appeal was continued unto this court for advisement. And now after a full hearing of the parties by their attorneys on said verdict, and mature advisement thereon, it's considered by the court that the said John Patch, Isaac Smith and Isaac Dodge in their said capacity recover against said Israel and John Herrick four shillings lawfull money of this province damage, and costs taxed at £16 : 9 : 8½."

*D. Farnham, N. P. Sargeant & S. Porter,* for the plaintiffs.†

*J. Adams & J. Lowell,* for the defendants, (as appears by Adams's notes) cited " Charter, last page; " ‡ and " Old Colony Laws, [ed. 1672] page 90, Tit. Liberties Common," being the ordinance of 1647, Anc. Chart. 148; *ante,* 465 note.

---

to the Proprietors of the Common Lands in Ipswich; and that no person or persons be allowed to digg any more clams than for their own use and to be expended in the town; and that all owners of fishing vessels and boats shall apply to one of said committee for liberty to digg clams for their vessel's use, fare by fare; and no owner of vessel or vessels, boat or boats, shall digg more clams than shall be allowed by one or more of said committee on penalty of prosecution; said committee are to allow one barrel of clams to each man of every vessel going to the banks every fare, and so also in proportion to boats fishing in the bay; and a majority of said committee are impowered to prosecute all offenders (to this vote) to finall judgment and execution in the name and behalf of said proprietors."

* Upon a rough draft of the special verdict, on file, Adams suggested: " and the flatts where the clams were dug are upon the coasts of New England, upon an arm of the sea or salt water river, where the King's subjects had been wont to fish when the Charter of this Province was made." To which Porter subjoined : " Note, not the least evidence hath been offered of this.".

† The only evidence of this is the recognizance, on file, to prosecute the appeal from the inferior to the superior court, which is executed by Porter as attorney of the plaintiffs, and by Farnham and Sargeant as sureties.

‡ " Provided also, and our expresse will and pleasure is, and wee doe by theis presents for us, our heires and successors ordeyne and appoint, that theis presents shall not in any manner enure, or be taken to abridge, barr, or hinder any of

our loving subjects whatsoever, to use and exercise the trade of fishing upon that coast of New England in America by theis presents mentioned to be graunted; but that they and every or any of them shall have full and free power and liberty to continue and use their said trade of fishing upon the said coast, in any the seas thereunto adjoyning, or any arms of the seas or saltwater rivers where they have byn wont to fishe, and to build and sett up upon the landes by theis presents graunted, such wharves, stages and workehouses as shalbe necessarie for the salting, drying, keeping and packing up of their fish to be taken or gotten upon that coast; and to cutt downe and take such trees and other materialls there groweing, or being, or shalbe needefull for that purpose, and for all other necessarie easements, helpes and advantage concerning their said trade of fishing there, in such manner and forme as they have byn heretofore at any tyme accustomed to doe, without making any wilfull waste or spoyle, anything in theis presents conteyned to the contrarie notwithstanding." Massachusetts Colony Charter, 1 Mass. Col. Rec. 19; Anc. Chart. 16, 17. The Province Charter contained a precisely similar proviso, except in limiting the common right of erecting wharves, stages and workhouses, and cutting trees, to "places lying waste and not then in possession of particular proprietors." Anc. Chart. 36, 37.